United States Court of Appeals
Fifth Circuit

F I L E D

UNITED STATES COURT OF APPEALS

July 7, 2003

Charles R. Fulbruge III
Clerk

FOR THE FIFTH CIRCUIT

No. 02-10740

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
AUG 14 2003
CLERK, U.S. DISTRICT COURT
By _____
  Deputy

PETULA ASSOCIATES, LTD.,

Plaintiff-Counter Defendant-Appellee

v.

DOLCO PACKAGING CORPORATION,
Tekni-Plex, Inc., successor by merger

Defendant-Counter Claimant-Appellant

Appeal from the United States District Court

for the Northern District of Texas

(3:96-CV-3216-P)

Before JONES and BENAVIDES, Circuit Judges, and KAZEN, Chief District Judge.[1]

KAZEN, Chief District Judge:*

---

[1] Chief Judge of the Southern District of Texas, sitting by designation.
* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

This appeal is a sequel to our decision in *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499 (5th Cir. 2001) ("Petula I"). The prior opinion recites all the pertinent facts as they existed at that time. In essence, on August 1, 1996, Dolco exercised an option to purchase property which it was leasing from Petula. This action triggered arguments about several closing details, primarily centered on the question of how to calculate the "fair market value" of the property. Petula claimed that the value of the existing lease should be included in the appraisal; Dolco disagreed. Litigation ensued, and the district court ruled in Dolco's favor, holding that the lease should not be included in the valuation of the property. Based on that ruling, a new appraisal was made on June 18, 1998. Dolco then requested a closing date for the sale.

Unfortunately, another dispute arose, as Petula argued that Paragraph 43(D) of the lease enabled it to tender the property subject to its first lien mortgage. Both sides returned to district court on that issue. At that time, Dolco also asked for an equitable accounting, claiming credit for rent it had paid since 1996, on the theory that Petula was at fault for delaying the closing. The district court again ruled in favor of Dolco, holding that Petula could not transfer the property subject to the lien because it did not have positive equity in the property. The district court granted Dolco's request for an equitable accounting for back rent, but fixed the starting point at July 18, 1998. The court reasoned that this date would have been the proper closing date after the appraisal of June 18, 1998, and essentially held Petula responsible only for improperly delaying that closing date. The district court also awarded attorneys' fees to Dolco.

After this ruling, the parties pursued the appeal, which led to Petula I. However, they also took a significant step in connection with the proposed appeal by negotiating and signing a

2

"Stipulation and Standstill Agreement," dated November 30, 1999. The intent of the agreement was explicit: "The parties desire to preserve their appellate rights, yet avoid disputes during and after appeal." The agreement recited that Dolco was entitled to receive, as of that time, equitable accounting in the sum of $529,284.00. The parties also agreed on the amount of reasonable attorneys' fees to be paid to Dolco, as ordered by the district court. The agreement provided that, beginning December 1, 1999 and throughout the pendency of the appeal, Dolco was relieved of its obligation to pay the base monthly rent. Further, if the judgment were not reversed, Dolco would pay to Petula at closing the purchase price minus the accounting. The agreement then contained the following provision which is now the subject of dispute:

> "8. If the award to Dolco for an Accounting is reversed, then Dolco will pay to Petula (in lieu of the interest described in the preceding paragraph) back base rent under the Lease from December 1, 1999 until closing of the transfer of the Property."

In Petula I, we expressly "reversed" the district court on the key valuation issue and held that the term "fair market value," contained in Paragraph 28 of the lease, would include the value of the lease agreement. Therefore, the appraisal of June 18, 1998, which excluded the value of the lease, "was incorrect as a matter of law," 240 F.3d at 505, and Petula could not have been in default for failing to close at that time. This conclusion necessarily destroyed the underpinnings of the equitable accounting award. We further concluded that Dolco obviously was no longer entitled to attorneys' fees on the valuation issue, although it did prevail on the claim that Petula could not attempt to transfer the property subject to the first mortgage lien, if the value of the mortgage exceeded the equity in the property. We summarized our holdings as follows:

> "Accordingly, we vacate the district court's award to Dolco of an equitable accounting

3

and attorneys' fees, without prejudice to the district court's ability on remand to reinstate a portion of the award for attorneys' fees related solely to the cost of litigating the first lien mortgage issue." 240 F.3d at 505.

We then remanded to the district court "for judgment consistent with this opinion." *Id.*

The opinion in Petula I was filed on February 12, 2001. One would have expected that the opinion, combined with the parties' "Standstill Agreement," would have facilitated a rapid end to this litigation, which began in November of 1996. Unfortunately, such was not the case. Instead, the parties resumed quarreling in district court.

This time, Dolco again sought an equitable accounting, but on different grounds. Dolco again claimed entitlement to an offset in the purchase price for all rent it had paid under the lease since the time it exercised the option to purchase in 1996. The new theory was that, since the June 1998 valuation was determined in part by capitalizing the rents due under the lease, it would be inequitable for Petula to receive the higher sale price and also keep the past paid rent. Petula responded by invoking the Standstill Agreement. The district court held that Dolco's new accounting theory was different from its original theory, that Texas law supports the general proposition of equitable accounting, and that Petula I did not foreclose this new theory. The district court further held, however, that the new dispute was squarely governed by Paragraph 8 of the Standstill Agreement, and that the parties were bound by that agreement. We agree.

Dolco argues that nothing in the Standstill Agreement constitutes a waiver of its "substantive rights" to an equitable accounting. Underlying this argument is the rather strained claim that Petula I did not "reverse" the prior award of an equitable accounting but only "vacated" it. Dolco then cites cases for the proposition that a vacatur and a reversal are distinct

4